# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.B.**

**No. 19-0582** (Mingo County 18-JA-83)

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.B., by counsel Diana Carter Wiedel, appeals the Circuit Court of Mingo County's May 31, 2019, order terminating his parental rights to B.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Susan J. Van Zant, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed a child abuse and neglect petition against petitioner and the mother. The DHHR alleged that the child was hospitalized when he was found in the mother's care at the time of her arrest for shoplifting. The mother was under the influence of drugs, and methamphetamine was found on her person. The child was covered in sores, which were later determined to be untreated eczema. His skin was described as chalky white with open sores, which bled and oozed pus. The child also had large bald spots on his head. He was dehydrated, and his hemoglobin level was severely low. The child was flown to Huntington, West Virginia, where he received a blood transfusion and treatment for his skin sores. Upon further investigation, it was revealed that the then-three-year-old child was developmentally delayed. The child was still in diapers, was nonverbal, and did not know how to drink out of a cup. Medical documentation

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

showed that neither petitioner nor the mother had followed up with the child's medical care for his eczema following the closure of a prior abuse and neglect case in 2017. At the time the underlying action was filed, petitioner was incarcerated and the DHHR alleged that he failed to protect the child from the mother's abuse. An amended petition was filed later in September of 2018, which added allegations regarding petitioner and the mother's prior child abuse and neglect proceedings.[2]

After several continuances, the circuit court held an adjudicatory hearing in December of 2018. Testimony established that, following the child's removal, his skin condition healed rapidly with proper treatment. A DHHR worker testified that, although petitioner had been incarcerated, he was released for a brief period after August 20, 2018, and could have treated the child's skin condition as shown by the rapid healing after removal. Petitioner testified that he was currently incarcerated. Petitioner claimed that he attempted to treat the child's eczema with ointment but that the doctors "ke[pt] prescribing the same kind of ointment and telling me that I need a different one, but when I'd try to get the different ointment they would not prescribe the ointment." Petitioner denied neglecting the child and stated that he "kind of not[ed]" the mother's drug abuse, but claimed "she's a really good mother." The circuit court adjudicated petitioner as an abusing parent, finding that petitioner was aware of the mother's substance abuse, but failed to protect the child and that the child had a serious skin condition that dramatically improved after being removed from petitioner's care.

The circuit court held the dispositional hearing in April of 2019. Petitioner was incarcerated as of the time of the dispositional hearing, but was transferred for the hearing. The circuit court took judicial notice of all prior testimony, findings of fact, and conclusions of law. The DHHR presented the testimony of a caseworker, who testified that the DHHR was recommending termination of petitioner's parental rights due to his failure to protect the child from the mother's substance abuse and provide medical treatment to the child. The caseworker opined that petitioner was unable to meet the needs of the child as of the dispositional hearing. Petitioner maintained that he had properly cared for the child's eczema, but testified that he had been absent from the home for approximately ten days prior to the child's removal due to his incarceration. Petitioner also testified that he did not believe the child had any developmental delays. Petitioner stated the child may be "a little behind on learning" because of the absence of any siblings in the home. Petitioner also changed his prior testimony regarding the mother's drug abuse, stating he did not know of the mother's substance abuse prior to his incarceration.

Following testimony, the circuit court noted that "the [child's] eczema was horrific, [and] it did not appear to have been treated in any way," contrary to petitioner's testimony. The circuit court found that petitioner was unwilling or unable to adequately provide for the needs of the child, that he had not participated in services or the case plan, and that he could not have missed the mother's drug abuse. Ultimately, the circuit court terminated petitioner's parental rights upon findings that there was no reasonable likelihood that the conditions of abuse and/or neglect could

---

[2]Prior child abuse and neglect proceedings were initiated against the parents in 2017. Petitioner and the mother were granted services, which they successfully completed, and the petition against them was dismissed in June of 2017, with services extending until September of 2017.

be substantially corrected in the near future and that the child's best interests necessitated termination. It is from the May 31, 2019, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights. According to petitioner, the circuit court's findings were contrary to the evidence. Petitioner contends that the circuit court made no findings relevant to the child's eczema or developmental delays, but terminated his parental rights based upon his failure to comply with services or a case plan when no services were offered to him. Petitioner argues that the circuit court also erred in terminating his parental rights when the DHHR failed to provide services to preserve the family. We disagree.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c), "[n]o reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Here, the record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse and/or neglect on his own or with help. At the time the child was removed from the home, he was suffering from severe sores, which bled and oozed pus due to his untreated eczema. The child had bald spots on his head and required a blood transfusion and treatment for dehydration. After being removed from the parents' care and placed in foster care, the child's condition dramatically improved. In fact, the DHHR worker testified that the child's sores healed

---

[3]The mother's parental rights were also terminated below. The permanency plan for the child is adoption in his current foster placement.

3

in approximately two weeks and any flare ups in the eczema had been managed with treatment. Nevertheless, petitioner maintained throughout the entirety of the proceedings that he provided proper medical care for the child's eczema. At the dispositional hearing, petitioner testified that he "took [the child] to doctors all over the tri-state area" and followed their recommendations including oatmeal baths and skin creams. Petitioner also continued to maintain that the child did not have any developmental delays, testifying "I don't believe that" when questioned about the delays. Petitioner blamed any perceived delay on the child's lack of interaction with siblings. Moreover, while petitioner initially admitted that he "kind of" knew about the mother's drug abuse, he testified at the dispositional hearing that he was unaware of the mother's severe methamphetamine use prior to his incarceration only ten days before the child's removal. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The evidence overwhelmingly demonstrates that petitioner failed to acknowledge the existence of abuse and/or neglect. As noted above, this failure to acknowledge the truth makes the problem untreatable. The circuit court found that petitioner was unable or unwilling to correct the conditions of abuse and neglect and that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future.

To the extent that petitioner claims the DHHR should have provided him services, we note that he remained incarcerated throughout the entirety of the proceedings and unable to participate in services. Again, petitioner failed to acknowledge the abuse and neglect, rendering any improvement period or services an exercise in futility at the child's expense. This Court has previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given that the circuit court properly found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and that the child's best interests necessitated termination, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 31, 2019, order is hereby affirmed.

4

Affirmed.

**ISSUED**:  February 7, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison